UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

TAMMY POITRAS,
             Plaintiff,

v.                                                    CASE NO. 3:14-cv-0981 (VAB)

CONNECTICARE, INC.,
             Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, ConnectiCare, Inc. ("ConnectiCare"), terminated the employment of Plaintiff,

Tammy Poitras, because she spent an evening at a bar drinking beer and dancing, while she was

out on medical leave.  Ms. Poitras claims that her termination violated the Family and Medical

Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  In particular, she claims that ConnectiCare

interfered with rights provided to her under the Act and retaliated against her for taking medical

leave.  *See* Compl., ECF No. 1.

ConnectiCare has filed a Motion for Summary Judgment, seeking judgment in its favor

on both the interference and retaliation claims.  Mot. for Summ. J., ECF No. 32.  For the reasons

that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.      Statement of Facts

ConnectiCare hired Ms. Poitras in October 2011 as a customer service associate.  Def.'s

Local Rule 56(a)1 Stmt. ¶1, ECF No. 32-1.  Her duties in this role included "receiving and

responding to telephone inquiries from members and providers regarding [insurance] benefits,

coverages, payments, finding doctors for members, and explaining health service policies and

procedures."  *Id.* ¶2.  She worked at a desk with a telephone and computer and wore a telephone

headset to respond to customer calls.  *Id.* ¶¶7-8.  The parties dispute the amount of freedom Ms.

Poitras had to take breaks and whether she could stand while working, but agree generally that Ms. Poitras had an office job oriented around a desk and a telephone. *Id.* ¶¶9-13; Pl.'s Local Rule 56(a)2 Stmt. ¶¶10, 13, ECF No. 38-2.

Ms. Poitras suffers from a degenerative disc disease in her lumbar spine and from spinal stenosis. *See* Pl.'s Ex. A, Poitras Dep. 79:1-11, 249:10-12, ECF No. 38-3. As a result of this condition, while employed at ConnectiCare, she experienced "[a] lot of pain" and could not stand or sit for long periods of time. *Id.* at 81:22-82:2, 82:13. She also had surgery in 2009 to manage the condition. *Id.* at 249:13-15.

In his certifications, Ms. Poitras's physician indicated that the condition was "chronic" and would exist for the rest of her life. *See e.g.*, Def.'s Ex. F, Certification dated 1/3/2013, ECF No. 32-7. He also indicated that the condition caused pain, that her pain was treated with medication, and that Ms. Poitras was unable to sit or stand during "painful episodes." *Id.*; Def.'s Ex. H, Certification dated 7/5/2013, ECF No. 32-9; Def.'s Ex. L, Certification dated 2/28/2014, ECF No. 32-13; Def.'s Ex. N, Certification dated 9/6/2013, ECF No. 32-15; Def.'s Ex. O, Certification dated 4/15/2014, ECF No. 32-17; Def.'s Ex. P, Certification dated 4/14/2014, ECF No. 32-17.[1]

In January 2013, Ms. Poitras requested "intermittent FMLA leave" to manage her condition. Def.'s Local Rule 56(a)1 Stmt. ¶14, ECF No. 32-1. In support of her request, she submitted a certification from her physician that stated she "had degenerative joint disease and spinal stenosis, and that she may have painful episodes" two to three days per month. *Id.* ¶15. The certification also noted that the condition could require absences from work at intervals "to be determined." Def.'s Ex. F, Certification dated 1/3/2013, ECF No. 32-7. ConnectiCare approved this initial leave request, effective January 14, 2013. Def.'s Local Rule 56(a)1 Stmt.

---

[1] The record contains no testimony from a doctor at this stage, as either a fact witness or an expert.

¶16, ECF No. 32-1.  The approval letter indicated that recertification "for the need to continue [the leave] will be required in six months."  Def.'s Ex. G, Letter dated Jan. 16, 2013, ECF No. 32-8.

Ms. Poitras submitted a number of additional requests for intermittent leave, all of which were approved, and culminated in her being on intermittent FMLA leave, almost continuously, from January 2013 to April 2014.[2]  She requested further intermittent leave in July or August 2013 with a recertification from her physician dated July 16, 2013, indicating that she was incapacitated by pain three to six times per month.  Def.'s Local Rule 56(a)1 Stmt. ¶¶17-18, ECF No. 32-1.  ConnectiCare also approved this request and extended her leave through September 13, 2013.  Id. ¶¶19-20.  In September 2013, Ms. Poitras submitted an additional request for intermittent leave with a recertification indicating that she experienced pain with the same frequency.  Id. ¶¶23-24; Def.'s Ex. N, Certification dated 9/6/2013, ECF No. 32-15.  Her request was approved, effective September 25, 2013.  Def.'s Local Rule 56(a)1 Stmt. ¶25, ECF No. 32-1; Def.'s Ex. K, Letter Dated Sept. 26, 2013, ECF No. 32-12.  The approval letter indicated that recertification "for the need to continue [the leave] will be required in six months."  Def.'s Ex. K, Letter Dated Sept. 26, 2013, ECF No. 32-12.

Ms. Poitras submitted an additional request for intermittent leave in March 2014, including a recertification from her physician that estimated again that she was incapacitated three to six times per month.  Def.'s Local Rule 56(a)1 Stmt. ¶¶26-27, ECF No. 32-1.  ConnectiCare approved this request for leave, effective March 17, 2014.  Id. ¶28; Def.'s Ex. M, Letter dated Mar. 25, 2014, ECF No. 32-14.  The letter contained the same language requiring recertification in six months.  Def.'s Ex. M, Letter dated Mar. 25, 2014, ECF No. 32-14.  For

---

[2] During her intermittent leave, Ms. Poitras left work early to attend aqua therapy.  Def.'s Local Rule 56(a)1 Stmt. ¶¶31-32, ECF No. 32-1.  There is no other evidence in the record indicating the duration of Ms. Poitras's absences from work while on intermittent leave.

each of these leave requests, Ms. Poitras's doctor continued to indicate that the condition required her absence from work only during painful episodes a few days per month.  *See* Def.'s Ex. H, Certification dated 7/5/2013, ECF No. 32-9; Def.'s Ex. L, Certification dated 2/28/2014, ECF No. 32-13; Def.'s Ex. N, Certification dated 9/6/2013, ECF No. 32-15.

In April 2014, before her intermittent leave period had ended, Ms. Poitras informed ConnectiCare that she was not capable of working because of her health condition and requested a leave of absence from April 1, 2014 through May 6, 2014.  Def.'s Local Rule 56(a)1 Stmt. ¶¶33-34, ECF No. 32-1.  With this request, she provided a certification from her physician who stated that she was "unable to stay in a sitting position or stand very painful" [sic] and that the frequency of her pain had increased to three to six episodes per week.  *Id.* ¶36.  Her physician also indicated that, due to her condition, she was unable to perform any of her job functions from April 1 to May 6, 2014.  Def's Ex. P, Certification dated 4/14/2014, ECF No. 32-17.  ConnectiCare granted this leave request.  Def.'s Local Rule 56(a)1 Stmt. ¶37, ECF No. 32-1.  During this time, Ms. Poitras also applied for and received short-term disability benefits that ConnectiCare paid for.  *Id.* ¶¶38-40.

On May 2, 2014, while out on her approved full-time FMLA leave, Ms. Poitras attended a non-work event at the Chute Gates Steakhouse and Saloon.  *Id.* ¶42.  While she was there, she danced to at least two songs and drank at least two beers.  *Id.* ¶¶43-44.  While dancing, Ms. Poitras raised her arms, clapped, and moved around the dance floor.  *Id.* ¶45.  A video and several pictures depicting Ms. Poitras during the event were posted to her Facebook page, where ConnectiCare employees saw them and showed them to their colleagues and supervisors.  *Id.* ¶46-47.

The video provoked concern among the ConnectiCare managers and employees who viewed it.  Several of them felt that, if Ms. Poitras could dance and drink at a bar, she could work.  *See e.g.*, Def.'s Ex. J, Bannon Dep. 36:11-37:23, ECF No. 32-11 (noting that she was "appalled that she was dancing and enjoying [her]self" in the video because, by comparison, her sister took only two-and-a-half weeks of leave when she had brain surgery); Def.'s Ex. S, Spires-O'Malley Dep. 48:6-24, ECF No. 32-20 (noting that her reaction to the video was "[d]isbelief, anger" and that she felt misled because she had seen Ms. Poitras three days before and "it appeared that she could barely walk… that she was in pain…");  Def.'s Ex. R, Punt Dep. 65:2-4, ECF No. 32-19 ("[S]o if [a medical condition] disallows one from coming to work, we couldn't see how that would allow someone to go out dancing."); Pl.'s Ex. F-2, Blier Dep. 29:23-30:2, ECF No. 38-9 ("I was very angry… I felt that she was being deceitful, and if she could go out and dance and do what she was doing, then she could probably come back to work.").  Ms. Poitras's colleagues at ConnectiCare were also quite busy at the time, and many of them had been asked to work extended hours.  Def.'s Local Rule 56(a)1 Stmt. ¶¶21-22, ECF No. 32-1.

Upon learning about Ms. Poitras's evening at the saloon, a ConnectiCare Human Resources Consultant, Douglas Punt, initiated an investigation into Ms. Poitras's behavior.  *Id.* ¶¶48-49.  During this investigation, he discovered that Ms. Poitras had driven to ConnectiCare's offices in Farmington, Connecticut, while she was out on her full-time FMLA leave, to deliver Avon products that she had sold to ConnectiCare employees.  *Id.* ¶54.  He also "conferred" with ConnectiCare's General Counsel, Mary Bannon, Ms. Poitras's manager, Laurie Blier, and ConnectiCare's "management."  *Id.* ¶¶55-56.

From his investigation, Mr. Punt had a general understanding that Ms. Poitras had a "serious health condition that did not allow her to sit or stand during times of extreme pain."

Def.'s Ex. R, Punt Dep. 64:25-65:2, ECF No. 32-19.  But the investigation involved no inquiry

into Ms. Poitras's medical condition or the restrictions her doctor had placed on her at the time.

*See* Def.'s Ex. J, Bannon Dep. 38:5-21, ECF No. 32-11; Def.'s Ex. R, Punt Dep. 63:11-64:21,

ECF No. 32-19.  Indeed, Mr. Punt never saw Ms. Poitras's physician's certifications, which were

deemed confidential.  Def.'s Ex. R, Punt Dep. 64:7-9, 64:21, ECF No. 32-19 ("Q. Did you

review any of the FMLA certification forms as part of your investigation?  A. No…. [O]nce

Adele gets [the FMLA forms], she keeps [them] confidential"); *see also* Pl.'s Ex. J, Balboni Dep.

30:23-31:7, ECF No. 38-14 ("A. No one would know what the doctor's orders are except for me

and the employee.  Q. And how do you know the doctor's orders?  A. From the family medical

leave certification form… that relates to that job and what they cannot do.").

On May 5, 2014, while the investigation was underway, Ms. Poitras requested an

additional thirty days of FMLA leave.  Def.'s Local Rule 56(a)1 Stmt. ¶58, ECF No. 32-1.

ConnectiCare claims that it approved this request on May 6, 2014, but the Court has not

identified any record evidence directly supporting this contention.  ConnectiCare cites an e-mail

in support of its position. Def.'s Br. 14 n.3, ECF No. 32-24 (referring to Def.'s Ex. U, E-mail

dated May 6, 2014, ECF No. 32-22); *see also* Def.'s Local Rule 56(a)1 Stmt. ¶59, ECF No. 32-1

(citing the same e-mail and a portion of Ms. Poitras's deposition that summarizes the e-mail's

contents).  But the e-mail does not indicate directly that ConnectiCare told Ms. Poitras that her

leave request was approved.  Instead, the e-mail indicates that Ms. Poitras "informed [Human

Resources] that she will be out another month," and that Human Resources told her that her

FMLA leave would be "exhausted" on June 5, 2014.[3]  Ms. Poitras never submitted a certification

or documentation from her doctor in support of this final leave request.

---

[3] Ms. Poitras does not contest that she was approved for FMLA leave until June 5, 2015.  But to support this
position, she relies on deposition testimony based on the same equivocal e-mail.  Pl.'s Opp. Br. 11, ECF No. 38-1

On May 7, 2014, the day after Ms. Poitras's first full-time leave period ended, ConnectiCare suspended Ms. Poitras's employment and asked that she meet with Mr. Punt and Ms. Blier on May 9.  Def.'s Local Rule 56(a)1 Stmt. ¶60, ECF No. 32-1.  Ms. Poitras tape recorded the meeting.  *See* Def.'s Ex. T, Recording of May 9 Meeting (manually filed).  During the meeting, the two supervisors confronted Ms. Poitras about the video and pictures of her dancing and drinking beer while she was out on leave.  *See* Def.'s Local Rule 56(a)1 Stmt. ¶64, ECF No. 32-1.  After giving her an opportunity to explain these events at the meeting, ConnectiCare terminated her.  *Id.* ¶¶64-65.

ConnectiCare's professed reason for terminating Ms. Poitras is that she deceived the company about her need for full-time FMLA leave and that she could have reported to work, to some extent, during that leave as evidenced by her dancing and drinking on May 2.  *Id.* ¶66.  It found that her misrepresentation violated company policies, which required employees to act with integrity and a high standard of ethical conduct.  *Id.* ¶66; Def.'s Ex. V, Punt's Handwritten Notes, ECF No. 32-23 ("EE shall not engage in any fraudulent or deceptive activity, incl. misrepresentations… can dance vigorously, but not work").

## II.     Legal Standard

Courts must grant summary judgment if there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party carries the burden of demonstrating that there is no genuine material dispute of fact by citing to "particular parts of materials in the record."  *See* Fed. R. Civ. P. 56(c)(1)(A)-(B);

---

(citing Pl.'s Ex. G, Punt Dep. 99:9-14, ECF No. 38-11) ("Q. Now, do you know whether Ms. Poitras had been approved for FMLA leave out into June 5, 2014?" A. Um, to my knowledge, she was, yes. Q. And what do you base that on? A. The e-mail from Adele Balboni."); *see also* Def.'s Ex. R, Punt Dep. 62:810, ECF No. 32-19 ("we found out that she had been—her leave was extended a month, um, on the 6th, that was from the e-mail from Adele…"). Where an admitted fact is not supported by admissible evidence at summary judgment, the Court need not accept it as true.  D. Conn. L. Civ. R. 56(a)3 (admitted facts are only deemed true by the court if they are "supported by the evidence").

*Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).  A dispute regarding a fact is "'genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and material if the substantive law governing the case identifies those facts as material. *Williams v. Utica Coll. Of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir. 1998)); *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In assessing a summary judgment motion, the Court must resolve all ambiguities and draw all inferences from the record as a whole in favor of the non-moving party.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted); *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) ("To survive summary judgment, the nonmovant must merely show that 'reasonable minds could differ as to the import of the evidence… in the record.'") (citation omitted).

## III.    Discussion

The FMLA entitles eligible employees "to a total of 12 workweeks of leave during any 12-month period… [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The Act allows such leave to be taken "intermittently or on a reduced leave schedule when medically necessary" as well as on a full-time basis.  *Id.* § 2612(b)(1).  The FMLA also requires an employer to reinstate its employee to her former position or an equivalent position at the end of

FMLA leave, unless the employee is unable to perform an essential function of the job at the end of his leave.  *Id.* § 2614(a)(1); *see Sarno v. Douglas-Elliman-Gibbons & Ives, Inc.*, 183 F. 3d 155, 161 (2d Cir. 1999) (finding that where plaintiff could not perform essential functions of his position at the end of his FMLA leave, his employer's decision not to reinstate him "did not infringe his FMLA rights").

To ensure that these rights are honored, the FMLA provides employees with two legal causes of action: interference and retaliation.  *See e.g.*, *Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004); *see also* 29 U.S.C. § 2615(a)(1).  Ms. Poitras asserts both claims in this lawsuit.  As explained further below, the Court denies summary judgment on both of these claims but limits the scope of her interference claim.

### A.  Interference Claim

An FMLA interference claim exists where an employer "restrain[s], or den[ies] the exercise or the attempt to exercise, any right" provided by the FMLA.  29 U.S.C. §2615(a)(1); *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (interference claims exist where "the defendant denied or otherwise interfered with a benefit to which [plaintiff] was entitled under the FMLA.").  To prevail on such a claim, Ms. Poitras must establish that (1) she is an eligible employee under the FMLA; (2) ConnectiCare is an employer as defined by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave notice to ConnectiCare of her intention to take leave; and (5) she was denied benefits to which she was entitled under the FMLA.  *Graziadio*, 817 F.3d at 424.

ConnectiCare concedes that Ms. Poitras has met the first, second, and fourth elements in this case but contends that she has failed to create a triable issue of material fact on the third and

fifth elements.  Def.'s Br. 13, ECF No. 32-24.  The Court will address these latter two elements separately.

### 1.    Entitlement to FMLA Leave (Third Element)

ConnectiCare argues that Ms. Poitras is not entitled to take FMLA leave, because she has failed to present sufficient evidence that she suffered from a serious health condition.  Def.'s Br. 13-14, ECF No. 32-24.  It reasons that Ms. Poitras misrepresented the nature of her medical condition, which ConnectiCare believes is evidenced by her evening of dancing and drinking while she was out on medical leave.  *Id.* at 14, 16.  In ConnectiCare's view, that deception not only prevents her from showing entitlement to FMLA leave but also constitutes misconduct separate from her entitlement to FMLA leave, for which it could discipline Ms. Poitras.  *Id.* 16-17.  Ms. Poitras contends that these arguments essentially raise an "honest belief" or "good faith belief" defense, which precludes an employer from being liable for an FMLA violation where it had a "good faith belief" that the plaintiff fraudulently obtained FMLA leave.  Pl.'s Opp. Br. 14, ECF No. 38-1.

Without deciding whether the so called "good faith belief" or "honest belief" defense applies to FMLA interference claims, the Court finds that, even if the defense did apply, disputed questions of fact exist on whether Ms. Poitras suffered from a serious medical condition entitling her to FMLA leave from April 1 through May 6, 2014.  Because the Court cannot determine whether she suffered from a serious medical condition during that time, it also cannot decide whether she misrepresented her condition to obtain FMLA leave.  However, the Court finds that Ms. Poitras has presented insufficient evidence that she continued to suffer from a serious medical condition past May 6, 2014.  Thus, as explained further below, her interference claim

may only proceed based on ConnectiCare's failure to reinstate her after her FMLA leave ended on May 6, 2014.

### a.  Serious Health Condition

Both parties agree that Ms. Poitras took leave under the FMLA for what she and her doctor claimed to be a "serious health condition."  *See* 29 U.S.C. § 2612 (a)(1)(D) ("an eligible employee shall be entitled to… leave… [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.").  Thus, her entitlement to benefits under the FMLA depends on whether she had a qualifying "serious health condition."

The Act defines "serious health condition" as an "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital… or (B) continuing treatment by a health care provider."  29 U.S.C. §2611(11).  The Department of Labor's regulations further define "serious health condition" as including "chronic conditions" that require "periodic visits (defined as at least twice a year) for treatment… over an extended period of time (including recurring episodes of a single underlying condition)" and that "[m]ay cause episodic rather than continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)."  29 C.F.R §825.115(c).[4]

ConnectiCare argues that no reasonable juror could conclude that Ms. Poitras was suffering from a condition that entitled her to leave under the Act at any time.  Def.'s Br. 13-14, ECF No. 32-24.  The Court disagrees.  Ms. Poitras has presented numerous certifications from her physician, which indicate that her condition placed limitations on her ability to work before May 6, 2014 and ultimately foreclosed her ability to work entirely from April 1 through May 6,

---

[4] Because the FMLA expressly gives the Department of Labor authority to prescribe regulations to carry out the Act, the Court may give those regulations "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  *Lee v. Heritage Health & Housing, Inc.*, No. 07 Civ. 10628(DF), 2009 WL 3154314, at * 10 (S.D.N.Y. Sept. 30, 2009) (internal quotation marks and citation omitted).

2014.  These certifications also indicate that she saw her doctor regularly for treatment for this condition.  Ms. Poitras also testified generally about the condition, its chronic nature, and the pain it causes her.

While her managers and colleagues at ConnectiCare believed she could work based on observing her dancing in the May 2, 2014 video, ConnectiCare's managers conducted no research into her medical condition whatsoever.[5]  ConnectiCare also presents no evidence to this Court from a medical expert or doctor about the nature of Ms. Poitras's condition and whether her physical activity on May 2, 2014 was consistent with that condition.  Without this evidence, the Court has little to indicate that Ms. Poitras did not have a qualifying serious medical condition and that she fraudulently obtained her FMLA leave before May 6, 2014.  Accordingly, the Court finds that Ms. Poitras has succeeded in showing that whether she suffered from a serious health condition before May 6, 2014 is a disputed factual question that should be resolved by a jury.

Ms. Poitras, however, has failed to provide sufficient evidence describing the status of her medical condition after May 6, 2014 for a jury to be able to conclude that she suffered from a serious medical health condition after that date.  Her doctor did not submit a certification in support of her final leave request and has not testified or provided an affidavit in this case.  Her doctor's prior certifications indicate that the condition was "chronic" and that symptoms appeared periodically, but he has not provided any testimony or certifications that specifically address her condition's status after May 6.  Ms. Poitras has also testified generally about her

---

[5]  The Act also provides a procedure by which an employer can obtain information about an employee's medical condition.  Under the FMLA, an employer may require that a request for leave be supported by a certification from a physician.  29 U.S.C. § 2613(a).  ConnectiCare required such a certification, consistent with the Act.  The FMLA also provides that "[i]n any case in which the employer has reason to doubt the validity of the certification provided… the employer may require… that the eligible employee obtain the opinion of a second health care provider…."  *Id.* §2613(c)(1).  While the FMLA does not obligate an employer to obtain a second medical opinion, such an opinion would have provided the Court with helpful evidence.

health condition, but her testimony does not specifically address the status of her condition and

the limitations it imposed on her after May 6.  In sum, the record contains no evidence that

directly and specifically pertains to the status of her condition as it existed after May 6.  A jury,

therefore, would have no basis to make any conclusions about the nature of her condition after

May 6, much less a basis to conclude that Ms. Poitras suffered from a serious health condition

that entitled her to FMLA leave after May 6.

      Nor does Ms. Poitras's testimony or any document in the record indicate sufficiently that

she believed her health condition prevented her from working entirely after May 6.  In fact,

during her May 9 discussion with Mr. Punt and Ms. Blier in which she was terminated, she

discusses an interest in working part-time.  Ms. Poitras did testify that her doctor "put [her] on

the FMLA leave for another month" in early May.  Def.'s Ex. A, Poitras Dep. 142:1-12, ECF

No. 32-2.  But without any evidence about the status of her condition at the time and why such

leave was necessary, a jury would still not have an adequate basis to conclude that Ms. Poitras

suffered from a serious medical condition after May 6, 2014.

      At oral argument, Ms. Poitras's counsel argued that because ConnectiCare approved her

last request for FMLA leave, the company is now estopped from arguing that she was not

entitled to FMLA leave from May 7 to June 5, 2014.  But estoppel does not apply here, because

there is insufficient record evidence that ConnectiCare told Ms. Poitras that it approved her final

leave request.  *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d

Cir. 2001) ("[A] party may be estopped from pursuing a claim or defense where: [ ] the party to

be estopped makes a misrepresentation of fact to the other party with reason to believe that the

other party will rely upon it…").  The parties rely on a rather cryptic e-mail to show that she was

granted leave, which is not the kind of affirmative misstatement of fact required for estoppel to

apply.  *See id.*; *see also e.g. Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 70-71 (D. Conn. 2014) (holding that plaintiff could not rely on estoppel because the evidence did not indicate that defendant "affirmatively represented" to her that she was approved to take FMLA leave).  Indeed, the record contains no evidence whatsoever of the content of the discussion Ms. Poitras had with anyone at ConnectiCare when she made her final request for FMLA leave, much less whether that leave was approved.

In sum, assuming that the good faith belief defense does not apply, Ms. Poitras has succeeded in demonstrating disputed fact questions exist as to her entitlement to FMLA leave before May 7, 2014.  She has failed to show that disputed fact questions exist on this question after May 6, 2014.  As a result, Ms. Poitras may proceed on her claim that ConnectiCare violated the FMLA when it failed to reinstate her on May 7, 2014, because such a claim is premised on whether Ms. Poitras had a serious health condition that entitled to FMLA leave before May 7. The Court grants summary judgment on her claim that ConnectiCare violated the FMLA by preventing her from taking the full twelve weeks of annual leave provided by the Act, because this claim's viability depends on Ms. Poitras presenting evidence from which a jury could conclude that she suffered from a serious health condition after May 6.  Because she has failed to do so, that aspect of her interference claim must be dismissed.

### b.    The "Good Faith Belief" or "Honest Belief" Defense

The "good faith belief" or "honest belief" defense precludes liability under the FMLA where an employer develops an honest suspicion that an employee is abusing his or her leave, even if that belief is ultimately mistaken.  *See e.g.*, *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909 (7th Cir. 2008); *Medley v. Polk Co.*, 260 F.3d 1202, 1207-08 (10th Cir. 2011) (reversing a district court's refusal to give a jury an "honest belief defense charge" with respect to an FMLA

claim); *Seeger v. Cincinnati Bell Telephone Co.*, 681 F.3d 274, 285-86 (6th Cir. 2012)

(describing the "honest belief rule" as "whether the employer made a reasonable informed and

considered decision before taking an adverse employment action" regardless of whether "the

employer's reason is ultimately found to be mistaken…") (internal quotation marks and citations

omitted); *Worster v. Carlson Wagonlit Travel, Inc.*, No. 3:02 CV 167 EBB, 2005 WL 1595596,

at *2 (D. Conn. July 6, 2005) ("[A]n employer who honestly believes that it is terminating an

employee who obtained FMLA leave fraudulently will not be liable even if the employer is

mistaken in its belief.").

　　　　As underscored by ConnectiCare's citations, none of which are from the Second Circuit,

the Court has not identified any Second Circuit cases discussing or approving of this defense in

the context of an FMLA interference claim.  *See Casseus v. Verizon, N.Y., Inc.*, 722 F. Sup. 2d

326, 337 (E.D.N.Y. 2010) ("The Second Circuit has not addressed the 'honest belief' defense in

the context of FMLA interference claims…").  However, the defense has been applied by some

district courts in this Circuit to interference claims, *see e.g. id.* at 337, and retaliation claims, *see

e.g.*, *Worster*, 2005 WL 1595596, at *2; *LeBoeuf v. N.Y. Univ. Med. Ctr.*, No. 98 Civ.

0973(JSM), 2000 WL 1863762, at * 3 (S.D.N.Y. Dec. 20, 2000) ("Where an employee is

terminated because the employer honestly believed that the employee was not using the leave

period for its 'intended purpose,' an FMLA claim will not lie.").

　　　　Assuming the the defense did apply to an FMLA interference claim, it would not warrant

a grant of summary judgment here.  To respond to this defense, Ms. Poitras is entitled to present

evidence that her employer did not honestly believe that she was abusing her leave, as indicated

by a number of the cases cited by ConnectiCare.  *See Seeger*, 681 F.3d at 286 ("An employer's

invocation of the honest belief rule does not automatically shield it, because the employee must

be afforded the opportunity to produce evidence to the contrary…"); *Tillman v. Ohio Bell Telephone Co.*, 545 F. App'x 340,  349 (6th Cir. 2013) (noting that to establish pretext when this defense is asserted, a plaintiff "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action."); *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 450 (6th Cir. 2012) (assessing defendant's investigation as "adequate" and finding that plaintiff did not "refute" defendant's "honest belief" theory that her behavior chronicled in photographs was inconsistent with her claims of total disability).  In other words, Ms. Poitras may present evidence that ConnectiCare's conclusion that she fraudulently obtained FMLA leave was incorrect and that its error was "too obvious to be unintentional."  *Seeger*, 681 F.3d at 286 (internal quotation marks and citation omitted).

The inquiry into whether the employer's belief was "honest" or, in fact, truly held requires assessing credibility and examining whether ConnectiCare "reasonably" relied "on the particularized facts that were before it at the time the decision was made."  *Tillman*, 545 F. App'x at 349; *see also Gurne v. Mich. Bell Telephone Co.*, No. 10-14666, 2011 WL 5553817, at *10 (E.D. Mich. Nov. 15, 2011) (holding that defendant failed to show entitlement to "honest belief rule" where it could not "establish its reasonable reliance on particularized facts that were before it at the time the decision was made to deny Plaintiff her FMLA leave.") (internal quotation marks and citation omitted) (citing *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (analyzing pretext in the Title VII context)); *cf. Johnson v. Reichhold, Inc.*, No. 09 C 1860, 2010 WL 3385548, at *8 (N.D. Ill. Aug. 23, 2010) (noting in the context of an FMLA interference claim that "[a] doubtful suspicion [of employee fraud regarding FMLA leave] may not be enough to deny summary judgment in most circumstances…").  Courts do not

require an "optimal" decision process, but rather that the "employer made a reasonably informed and considered decision" and, thus, that the belief was honest.  *See Tillman*, 545 F. App'x at 349.

Ms. Poitras has presented evidence which raises a number of disputed factual questions surrounding this defense.  First of all, as noted above, disputed factual questions exist as to whether Ms. Poitras suffered from a serious health condition.  Moreover, as described above, ConnectiCare terminated Ms. Poitras on the basis of a single incident and did not research her medical condition or the details surrounding her need for medical leave.  The record also contains testimony from supervisors expressing anger at the video and their lay opinion, that if she could dance, she could work.  Based on these facts, a jury could conclude that ConnectiCare did not develop enough sufficient, particularized facts to reasonably conclude that Ms. Poitras was abusing her FMLA leave.  In other words, when considering all of the evidence, a reasonable juror could conclude that ConnectiCare lacked an honest belief that Ms. Poitras fraudulently obtained her leave.  *See e.g. Nelson v. Oshkosh Truck Corp.*, No. 07-C-509, 2008 WL 4379557, at *6 (E.D. Wis. Sept. 23, 2008) (holding that an honest belief defense could not warrant summary judgment where the plaintiff offered evidence that the conduct at issue was consistent with the limitations her doctor had placed on her); *Weimer v. Honda of Am. MFG., Inc.*, No. 2:06-CV-844, 2008 WL 2421648, at * 6 (S.D. Ohio June 12, 2008) ("[I]f Defendant knew that Plaintiff's purported on-leave activities did not rise to the level of his job functions, then regardless of whether the investigation is mistaken or correct as to his on-leave activities, the investigation's conclusions cannot provide the honest belief on which Defendant relies.").

The cases cited by ConnectiCare in support of granting summary judgment are all distinguishable.  In those cases, plaintiffs put forth little, if any, evidence undermining the honesty or genuineness of their employer's belief that they were abusing FMLA leave.  For

example, in *Jaszcyzszyn*'s application of the honest belief defense, the Court concluded as a matter of fact that Jaszcyzszyn's behavior had been "fraudulent." *Jaszcyzszyn*, 504 F. App'x at 450. In particular, the employer and the Court were persuaded of this fact when Jaszycyzszyn failed to "voice" her disagreement that attending a festival was inconsistent with statements in her FMLA documents that she was "completely incapacitated." *Id.* at 445, 450. Here, Ms. Poitras immediately voiced her disagreement with ConnectiCare's conclusion that the video indicated she could work. *See* Ex. T, Recording of May 9 Meeting (manually filed). The evidence is not so one-sided that the Court can conclude at this stage that Ms. Poitras fraudulently obtained her FMLA leave.

Similarly in *Rowe v. United Airlines, Inc.*, 62 F. Supp. 3d 1225, 1233 (D. Colo. 2014), the Court concluded that the "evidence supports… that [plaintiff] improperly used her FMLA leave, and that [plaintiff] did not provide to Defendant evidence to the contrary." Finally, in *Warwas v. City of Plainfield*, 489 F. App'x 585, 588 (3d Cir. 2012), the Third Circuit found that a defendant's honest belief defense warranted summary judgment where a plaintiff worked another job while out on FMLA leave. Here, Ms. Poitras has presented evidence that ConnectiCare's belief that she was abusing her FMLA leave was not well founded. *See e.g.*, *Casseus*, 722 F. Supp. 2d at 340 (finding that the honest belief defense did not warrant granting summary judgment where plaintiff was caught on surveillance video engaging in tasks which the defendant believed were inconsistent with his FMLA leave because "the video covers a small part of [plaintiff's] leave" and unresolved factual disputes existed as to whether the observed conduct was inconsistent with plaintiff's doctor's prescriptions). Accordingly, the Court finds that disputed factual issues preclude the grant of summary judgment on the basis of the "good faith belief" or "honest belief" defense.

### 2.    Employer Denied FMLA Benefits (Fifth Element)

ConnectiCare argues that it provided Ms. Poitras with all of the leave to which the FMLA entitled her, because it granted all of her FMLA leave requests, even if it terminated her before she could take her last leave.  Def.'s Br. 14, ECF No. 32-24.  This argument has become moot because the Court has dismissed any interference claim based on ConnectiCare refusing to allow Ms. Poitras to take her last month of leave from May 7 to June 5, 2014.  Ms. Poitras's interference claim may only be based upon a reinstatement theory.

The FMLA entitles employees to reinstatement to their jobs or an equivalent position after taking leave.  29 U.S.C. § 2614(a).  Because Ms. Poitras was suspended the day after her leave ended and terminated two days after that, she was denied this benefit.  Thus, there is a disputed factual issue as to whether she should have been reinstated.  Although the right to reinstatement does not apply without exceptions, ConnectiCare does not argue that any such exceptions apply here.  Thus, Ms. Poitras has succeeded in demonstrating that disputed factual issues exist with respect to the fifth element of her interference claim, precluding a grant of summary judgment.

### B.  Retaliation Claim

Ms. Poitras also claims that, by terminating her, ConnectiCare was retaliating against her for taking FMLA leave.  Where no direct evidence of retaliation is offered, the burden-shifting analysis articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies to such claims brought under the FMLA.  *See Potenza*, 365 F.3d at 168; *Graziadio*, 817 F.3d at 429.  Under this framework, to survive summary judgment, Ms. Poitras must show disputed, material factual questions exist on all of the following elements: "(1) [s]he exercised rights protected under the FMLA; (2) [s]he was qualified for [her] position; (3) [s]he suffered an

adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168.  If she makes this showing, the burden shifts to ConnectiCare to provide a legitimate, non-retaliatory reason for the adverse employment action.  *Graziadio*, 817 F.3d at 429.  If ConnectiCare meets this burden, Ms. Poitras must then demonstrate that the reason was pretext for retaliation to survive summary judgment.  *Id.*; *Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 623 (2d Cir. 2012).

ConnectiCare does not contest that Ms. Poitras has met her prima facie burden, but argues that it has provided "valid business reasons for terminating" her that was not a pretext for retaliation.  Def.'s Br. 21, ECF No. 32-24.  In its view, the record evidence demonstrates that ConnectiCare believed Ms. Poitras misrepresented her medical condition to obtain FMLA leave and that it terminated her for defrauding the company to obtain that leave.  It also argues that Ms. Poitras has failed to produce evidence that this reason was a pretext for retaliation.  *Id.* at 23.

A plaintiff demonstrates pretext where he or she shows that a retaliatory motive played a role in causing the adverse employment action.  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 1010).  Evidence of pretext may include temporal proximity between the protected activity and the adverse action plus additional evidence either showing retaliatory animus or disproving the truth of the employer's legitimate reason for the adverse action.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations to defeat summary judgment….") (under Title VII); *Summa v. Hofstra Univ.*, 708 F.3d 115, 129-30 (2d Cir. 2013) (finding plaintiff made a sufficient showing of pretext to survive summary judgment where the record contained evidence supporting plaintiff's narrative and disproving factual elements of the defendant's legitimate rationale for its adverse

action); *Treglia v. Town of Manlius*, 313 F.3d 713, 721-22 (2d Cir. 2002) (finding on retaliation claims under the ADA and Rehabilitation Act, plaintiff made a sufficient showing on pretext to survive summary judgment where there were statements made by managers that indicated a retaliatory motive and the record contained evidence that could refute the defendant's legitimate reason for its adverse action).

Both sides note that the Second Circuit has not provided clear guidance on whether the plaintiff must prove that her FMLA leave was a "motivating factor" or "but for" cause of the adverse employment action. Def.'s Br. 19, ECF No. 32-24; Pl.'s Br. 20-23, ECF No. 38-1. The Court need not answer this question at this time, because it concludes that Ms. Poitras has produced enough evidence to raise a genuine question of material fact under the stricter "but for" causation standard.

First, for the same reasons discussed above in the context of the interference claim, the "good faith belief" or "honest belief" defense does not preclude liability, given the disputed facts in this record.[6] Second, as explained further below, Ms. Poitras has identified in the record disputed factual issues related to pretext and retaliatory intent that are sufficient to survive summary judgment.

Ms. Poitras has shown that ConnectiCare terminated her three days after she sought additional FMLA leave, creating a very close temporal link between the protected activity and the adverse employment action.[7] In addition, Ms. Bannon and Ms. Blier, who were directly involved in the decision to terminate her, expressed anger and shock after viewing the video of

---

[6] The Court has no doubt that if the honest belief defense exists, it applies to retaliation cases. Retaliation claims require examining an employer's intent or mindset. *See Potenza*, 365 F.3d at 168 (discussing the retaliatory intent requirement). Thus, the defense would seem to have a place in the analysis.

[7] Temporal proximity is relevant, no matter which causation standard applies. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity.")

Ms. Poitras dancing.  Most directly, Ms. Blier, who was in the meeting where Ms. Poitras was terminated, indicated that she decided that firing Ms. Poitras was the proper course of action after she saw that Ms. Poitras had requested more FMLA leave and not merely after she had seen the video.  Pl.'s Ex. F-2, Blier Dep. 29:19-30:18, ECF No. 38-9.  This testimony permits a jury to infer that it was the request for leave itself that triggered her termination, the essence of a retaliation claim.

Finally, Ms. Blier also testified that whether Ms. Poitras was following her doctor's orders was not relevant to whether she was misusing the FMLA.  Pl.'s Ex. F-2, Blier Dep. 35:1-6, ECF No. 38-9 ("Q. Did Tammy tell you during the meeting that she was following her doctor's orders?  A. Yes. Yes. Q. Did you consider that relevant as to whether or not she was misusing FMLA? A. No.").  If a jury believes that Ms. Poitras was not abusing FMLA leave, it also could conclude that ConnectiCare's proffered legitimate reason for terminating her is false or that the real reason was retaliation.

Viewing all of this evidence in the light most favorable to Ms. Poitras, a jury could conclude that retaliatory intent was either a motivating factor or the but-for cause of her termination.  To satisfy the but-for causation standard, Ms. Poitras must produce evidence indicating that she would not have been terminated if ConnectiCare had not retaliated against her for using FMLA leave.  *See Zann Kwan*, 737 F.3d at 846 ("'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.").  Since the record is devoid of evidence of poor performance, an inability of Ms. Poitras to get along with colleagues, or any other reason that might have caused the company to terminate her, if Ms. Poitras discredits the sole legitimate reason proffered for her termination at trial, a jury could conclude

that retaliation was the but-for cause of her termination.  Because motivating factor is a less

exacting causation standard than but-for, Ms. Poitras plausibly could satisfy either standard.

**IV.     Conclusion**

For all of the foregoing reasons, ConnectiCare's Motion for Summary Judgment, ECF

No. 32, is **GRANTED IN PART** and **DENIED IN PART**.  The Court dismisses the aspect of

Ms. Poitras's interference claim that is based on her entitlement to more FMLA leave after May

6, 2014.  She may proceed on her interference claim to the extent she argues that ConnectiCare

failed to reinstate her on May 6 at the end of her FMLA leave.  She may also proceed on her

retaliation claim.

**SO ORDERED** this thirtieth day of June 2016 at Bridgeport, Connecticut

 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE